Filed 2/26/26  P. v. Harvey CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES EARL HARVEY,<br><br>    Defendant and Appellant. | D084219, D084220<br><br><br>(Super. Ct. Nos. CR59270, CR57721) |

CONSOLIDATED APPEALS from judgments of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant James Earl Harvey turned 18 on September 26, 1981. One month later, he committed multiple robberies and ultimately pled guilty to two of them. In April 1982, about six months after committing the robberies, Harvey committed murder and attempted murder, for which a jury convicted him in February 1983. A judge sentenced Harvey in both cases to a total prison term of 29 years to life.[1]

Forty-one years later, in 2024, Harvey filed a petition for recall and resentencing under Penal Code section 1170, subdivision (d),[2] which provides a resentencing mechanism for "defendant[s] who [were] under 18 years of age at the time of the commission of [an] offense for which the defendant was sentenced to imprisonment for life without the possibility of parole [(LWOP)]." (§ 1170(d)(1)(A).) Harvey argued that his sentence was the functional equivalent of an LWOP sentence and, while acknowledging he was 18 when he committed the offenses, argued that providing a recall and resentencing mechanism to defendants who were *under 18* but denying such a mechanism to defendants who were *18 or older* violates his equal protection rights. The trial court denied the motion. Harvey reasserts his equal protection argument on appeal. Because courts have long recognized the age of 18 as a rational delineating point for treating offenders differently, we reject Harvey's challenge and affirm the judgments.

---

[1] As we explain in part II.A, *post*, Harvey's prison term contains both determinate term and indeterminate term components.

[2] Undesignated statutory references are to the Penal Code. We will refer to section 1170, subdivision (d) as "section 1170(d)."

## II. BACKGROUND

### A. The Underlying Convictions and Sentences

This consolidated appeal involves sentences imposed in separate underlying cases.

In 1981, in superior court case number CR57721 (our case number D084220), Harvey pleaded guilty to committing two counts of robbery, with a firearm enhancement. Harvey had only recently turned 18. The trial court sentenced Harvey to five years in prison.

In 1982, in superior court case number CR59270 (our case number D084219), a jury found Harvey guilty of committing first degree murder and attempted murder, with firearm and bodily injury enhancements. Harvey was 18 and a half at the time. The trial court sentenced him to 40 years to life in prison. On appeal, this court reversed Harvey's first degree murder conviction and on remand gave the People the option to accept a reduction to second degree murder. In the trial court, the People accepted the reduction and the trial court resentenced Harvey to 29 years to life in prison, consisting of (1) 15 years to life, plus two years for the firearm enhancement, on the murder count; and (2) nine years, plus three years for the bodily injury enhancement, on the attempted murder count.[3]

### B. The Petition for Recall and Resentencing

In February 2024, after serving more than 40 years in prison, Harvey filed in propria persona a petition for recall and resentencing under section 1170(d). He acknowledged he was 18 at the time he committed the

---

[3] It is unclear from the limited record before us whether or how the trial court's resentencing in the murder case addressed Harvey's sentence in the robbery case.

underlying offenses, but asked, "What is the difference between being 17 and one month or [a] month and a half over 18?"

The People opposed Harvey's motion on the ground that his age made "him categorically ineligible for the relief he seeks."

The trial court appointed counsel for Harvey and issued an order to show cause why his petition should not be denied for failing to state a prima face showing of eligibility with respect to his age.

Counsel for Harvey thereafter filed a brief arguing that "excluding someone who was an 18-year-old at the time of their controlling offense from the relief afforded by . . . section 1170(d) and affording relief to a 17-year-old, who is cognitively similarly situated, amounts to a violation of equal protection." Harvey attached to his brief a scientific article discussing brain development in adolescents and young adults. Harvey also argued that his sentence was the functional equivalent of an LWOP sentence because he "is now over the age of 60 and still in prison for crimes he committed when he was 18 years old."

After hearing argument from counsel, the trial court found that Harvey "fail[ed] to establish a prima facie showing that [he] is eligible for relief statutorily" because he "was not a juvenile at the time of the offense as defined by the statutes." The court rejected Harvey's equal protection argument with the following explanation:

> I think it's important for the courts to recognize that it is the prerogative and duty of the Legislature to define degrees of culpability and punishment and statutory means of relief from previous punishment. It is the prerogative and duty of the Legislature to distinguish between crimes and individuals convicted of those crimes. I think under *People v. Hardin* [(2024) 15 Cal.5th 834 (*Hardin*)], the standard is a rational basis review. And as *Hardin* suggests, that

4

review is deferential. And by deferential, it means respect for the Legislature's proper role and an understanding of the court's proper role. [That] means that an enactment is not stricken under a rational basis standard unless there is no rational relationship between the disparity of treatment and some legitimate governmental purpose. This . . . argument raised by the defense strikes at the very nature of the existence of juvenile court and juvenile law and juvenile procedures and the dividing line. I would make the gratuitous observation that the wisdom of the policy decisions by the Legislature many times are called into question and sometimes the scientific research as recently as surfacing as represented by this particular article in support of the defense argument. But the wisdom of the Legislature is not the prerogative of the court, and the choices that [it] make[s] in this circumstance are a matter for deference. And accordingly, I would decline to rule that there is an equal protection violation. The petition is denied.

The trial court did not address Harvey's argument that his 29-year-to-life sentence was the functional equivalent of an LWOP sentence.[4]

## III. DISCUSSION

Harvey contends section 1170(d) violates his equal protection rights by providing a recall and resentencing mechanism for defendants who received LWOP sentences for offenses they committed when they were *under* 18 but denying such a mechanism to defendants who received LWOP sentences for offenses they committed when they were 18 or older. We disagree.

---

[4]    Harvey does not raise this issue on appeal. Because we reject his equal protection challenge on other grounds, we do not address whether his sentence is the functional equivalent of an LWOP sentence.

5

## A. Relevant Legal Principles

The relevant statutory provision, section 1170(d)(1)(A), provides: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." Section 1170(d), more broadly, was enacted in response to "a seismic shift in the law governing juvenile punishment . . . 'based upon developments in scientific research on adolescent brain development confirming that children are different from adults in ways that are critical to identifying age-appropriate sentences.' " (*People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1048, citations omitted (*Bagsby*).) The statute's application only to offenders who were under 18 gives rise to Harvey's equal protection challenge.

"The equal protection clause of the Fourteenth Amendment to the United States Constitution provides that no state may 'deny to any person within its jurisdiction the equal protection of the laws.' This provision is 'essentially a direction that all persons similarly situated should be treated alike.' [Citation.] 'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' " (*Hardin, supra,* 15 Cal.5th at p. 847, fn. omitted; see *ibid.,* fn. 2 ["The California Constitution also guarantees equal protection of the law. (Cal. Const., art. I, § 7, subd. (a).)"].)

The Supreme Court recently clarified in *Hardin* how courts are to evaluate equal protection challenges: "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection,

courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question.  The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review.  The burden is on the party challenging the law to show that it is not." (*Hardin*, *supra*, 15 Cal.5th at pp. 850–851.)

"The degree of justification required to satisfy equal protection depends on the type of unequal treatment at issue.  Courts apply heightened scrutiny when a challenged statute or other regulation involves a suspect classification such as race, or a fundamental right such as the right to vote, and accordingly will demand greater justification for the differential treatment.  [Citations.]  But when a statute involves neither a suspect classification nor a fundamental right, the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' [Citations.]  A court applying this standard finds 'a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose.' " (*Hardin*, *supra*, 15 Cal.5th at p. 847.)

Age is not a suspect classification for equal protection purposes and is, therefore, subject to rational basis review.  (See *Kimel v. Florida Bd. of Regents* (2000) 528 U.S. 62, 83; *Perez v. County of Monterey* (2019) 32 Cal.App.5th 257, 264.)  Harvey does not contend otherwise.

"Rational basis review 'sets a high bar' for litigants challenging legislative enactments.  [Citation.]  The reasons for this lie at the heart of our democratic system of governance.  'Coupled with a rebuttable presumption that legislation is constitutional, [rational basis review] helps ensure that democratically enacted laws are not invalidated merely based on a court's

7

cursory conclusion that a statute's tradeoffs seem unwise or unfair.' " (*Hardin*, *supra*, 15 Cal.5th at p. 852.) "Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' [Citation.] Evaluating potential justifications for disparate treatment, a court reviewing a statute under this standard must 'treat the statute's potential logic and assumptions far more permissively than with other standards of constitutional or regulatory review.' [Citation.] 'If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " ' [Citation.] '[T]he logic behind a potential justification need [not] be persuasive or sensible—rather than simply rational.' " (*Ibid*.)

We review de novo an equal protection challenge to classifications in a criminal statute. (See *Bagsby*, *supra*, 106 Cal.App.5th at p. 1054; *In re Murray* (2021) 68 Cal.App.5th 456, 463 (*Murray*).)

**B. Analysis**

On its face, section 1170(d)(1)(A) makes Harvey ineligible for recall and resentencing because he admittedly was not "under 18 years of age" when he committed the underlying offenses. (§ 1170(d)(1)(A).) Thus, his challenge to the denial of his petition has merit only if the statutory distinction between offenders "under 18 years of age" and those age 18 or older violates equal protection principles. It does not.

"When it comes to criminal sentencing, the United States and California Supreme Courts have found the line drawn between juveniles and nonjuveniles to be a rational one." (*Murray*, *supra*, 68 Cal.App.5th at p. 464

[finding a rational basis for § 3051's provision of a youth offender parole hearing to LWOP offenders who were under 18 at the time of their offense but not to those who were 18 or older]; see, e.g., *Miller v. Alabama* (2012) 567 U.S. 460, 471 ["children are constitutionally different from adults for purposes of sentencing"]; *Roper v. Simmons* (2005) 543 U.S. 551, 574 ["The age of 18 is the point where society draws the line for many purposes between childhood and adulthood."]; *People v. Gamache* (2010) 48 Cal.4th 347, 405 ["We previously have rejected the argument that a death penalty scheme that treats differently those who are 18 years of age and older, and those younger than 18, violates equal protection."]; *People v. Sands* (2021) 70 Cal.App.5th 193, 204 ["The Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age."].)

For purposes of a petition for recall and resentencing under section 1170(d), in particular, "[t]he Legislature could reasonably decide that for those convicted of LWOP crimes, the line should be drawn at age 18, rather than at some later date when the brain is fully developed. Drawing a bright line at age 18 establishes an objective and easily implemented measure, which has been used by the United States Supreme Court for sentencing purposes. While a different line could have been drawn, it is not entirely arbitrary to limit [former] section 1170(d)(2) [now section 1170(d)(1)(A))] to individuals who committed their crimes before they were 18 years old." (*In re Jones* (2019) 42 Cal.App.5th 477, 483.)

Harvey raises two points in support of his position. First, he argues "[t]he present situation is analogous to" *People v. Heard* (2022) 83 Cal.App.5th 608, in which this court found an equal protection violation — even under the rational basis standard — as to a different aspect of section 1170(d). (*Heard*, at p. 633 ["we are unable to identify a rational basis for

9

making juveniles sentenced to an explicitly designated life without parole term, but not juveniles sentenced to the functional equivalent of life without parole, eligible to petition for resentencing under [§ 1170(d)(1)]"].)  The classification at issue in *Heard* — disparate treatment of juvenile offenders based on *punishment* — is not analogous to the well-established classification of offenders based on *age*.

Second, Harvey discusses at length a scientific article regarding adolescent and young adult brain development.  Harvey's argument is better directed to the Legislature and not to the courts.  Our rejection of Harvey's equal protection challenge "does not turn on [our] judgments about what constitutes sound sentencing policy.  It turns on the deference we owe to the policy choices made through the democratic process by the people of California and their elected representatives.  The legislative branch may continue to consider the appropriate reach of [section 1170(d)(1)(A)] in light of the recognized capacity of young persons for growth and change.  [Harvey] has not, however, established that the legislative policy choices reflected in current law are irrational and therefore impermissible as a matter of equal protection." (*Hardin*, *supra*, 15 Cal.5th at pp. 839–840.)  "We emphasize . . . that the question before us concerns only the constitutional permissibility of the lines the Legislature has drawn.  It is not for us to pass judgment on the wisdom or desirability of its policy choices." (*Id*. at p. 864.)

## IV.  DISPOSITION

The judgments are affirmed.


                                                                RUBIN, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.